OPINION
Defendant-appellant Theodore Mong, II, appeals his convictions and sentences from the Licking County Court of Common Pleas on thirty one counts of sales of unregistered securities, in violation of R.C. 1707.44(C)(1); twenty counts of sales of securities without a license as defined by law after October 11, 1994, in violation of R.C. 1707.44; eleven counts of sale of securities without a license as defined by law prior to October 11, 1994, in violation of R.C. 1707.44(A); seven counts of fraudulent practices in the sale of securities, in violation of R.C. 1707.44(G); seven counts of false representation in the sale of securities, in violation of R.C. 1707.44(B)(4); one count of engaging in a pattern of corrupt activity, in violation of R.C.2923.32; and one count of receiving stolen property, in violation of R.C. 2913.51. Plaintiff-appellee is that State of Ohio.
 STATEMENT OF THE FACTS AND CASE
In 1993, appellant and Sheena Guthrie formed a business entity known as "McKenzie/Matthew". In January, 1994, appellant, Guthrie, and George Shirley restructured McKenzie/Matthew into an incorporated association known as "Liberty Bell Association". Appellant was the president of Liberty Bell. The expressed purpose of the association was to acquire funds from individual investors, which were pooled together and loaned out in blocks to separate entities in order to generate additional revenue through rolling over the original funds. Various individuals in the Licking County area provided appellant with funds ranging from $2,000 to over $200,000.
The monies loaned to Liberty Bell were secured by promissory notes executed by Liberty Bell as the obligator and the individual contributors as the obligees. Under the terms of the notes, Liberty Bell would repay the obligee the principal of the loan plus 12% interest, two years from the date of the loan. After Liberty Bell obtained monies from the individual contributors, appellant loaned those funds to other entities secured by promissory notes containing the same terms.
The loans took two forms. First, Liberty Bell made loans either directly or indirectly to International Mortgage Company with the express purpose of originating residential loans. Second, Liberty Bell made loans to Global Environmental Industries with the express purpose of assisting the company in gaining a sufficient capital base with which to make a public offering of stock on the NASDAQ Exchange. The individual investors contacted by appellant did not have direct dealings with International Mortgage or Global Environmental. Neither appellant nor Liberty Bell transferred the promissory notes executed by International Mortgage or Global Environmental to the individual contributors of the funds. Concisely, the individual contributors loaned monies directly to Liberty Bell via appellant and, Liberty Bell, in turn, loaned those funds to International Mortgage or Global Environmental.
When appellant solicited investors for the funds, which were ultimately loaned by Liberty Bell, he directly and indirectly represented to the individuals their investments were fully guaranteed by government bonds, security companies, or similar assets. However, in reality, the monies were not secured. Of the 1.5 million dollars raised by appellant, only $143,000 were returned to investors.
As part of the agreements between Liberty Bell and both International Mortgage and Global Environmental, Liberty Bell received a commission for the funds raised. Although the promissory notes executed by International Mortgage and Global Environmental represented the full amount of the funds originally contributed by the individuals solicited by appellant, Liberty Bell and appellant retained between 10% and 20% of the original contributions as the "commission" promised by the borrowing companies. Appellant, therefore, collected his commission "off the top" from the original funds to Liberty Bell, rather than directly from the companies eventually receiving the monies. Appellant did not explain this arrangement to the individual investors.
In June, 1995, the Securities and Exchange Commission began an inquiry into Liberty Bell and its business dealings. Subsequently, on June 19, 1997, the Licking County Grand Jury indicted appellant on seventy-nine counts of various security law violations, one count of receiving stolen property, and one count of engaging in a pattern of corrupt activity. At his arraignment on June 30, 1997, appellant entered pleas of not guilty to all the charges contained in the indictment.
The trial court scheduled the matter for jury trial on December 8, 1997. On October 30, 1997, the trial court continued the matter until January 12, 1998, in order to allow the parties to prepare and submit trial briefs relative to the jury instructions. On January 7, 1998, the trial was continued until January 26, 1998. Again, on January 15, 1998, the trial court rescheduled the trial until April 14, 1998.
On April 14, 1998, prior to the start of trial, appellant requested the trial court appoint alternative counsel. After hearing appellant's reasons for the request, the State's arguments in opposition, and appellant's trial counsel's comments, the trial court denied appellant's request and ordered him to proceed with original counsel.
After hearing all the evidence and deliberations, the jury found appellant guilty of each count with which they were presented.[1] On April 24, 1998, the trial court sentenced appellant to an aggregate minimum term not to exceed fifteen years.
It is from these convictions and sentences appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S REQUEST FOR THE APPOINTMENT OF ALTERNATIVE COUNSEL.
 II. THE CONVICTION OF THE DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT WAS NOT ESTABLISHED THAT THE DEFENDANT-APPELLANT "SOLD" ANY SECURITIES.
 I
In his first assignment of error, appellant maintains the trial court erred in denying his request for the appointment of alternative counsel.
The applicable standard of review of a trial court's decision denying a criminal defendant's request for new counsel is abuse of discretion. State v. Coleman (1988), 37 Ohio St.3d 287, 292. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
In order to discharge a court-appointed attorney, a defendant must show "a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." State v. Coleman, supra. (Citation omitted).
Prior to the commencement of the proceedings on the day of trial, Attorney Bruce Ennen, appellant's trial counsel, notified the court appellant wished to discharge him and secure other counsel. The trial court conducted an in chambers discussion with appellant, Attorney Ennen, and the State. The following dialogue transpired:
 THE COURT: Mr. Ennen, do you have any additional statement?
 MR. ENNEN: Yes, Your Honor. Immediately prior to starting trial, Mr. Mong has informed me that he wishes to have another attorney. I have informed Mr. Mong for about a week now, or in the last several meetings, that I believe that despite my best efforts and preparation, that I believe that there is a good chance that he will be convicted. I believe that that has caused some problem in our relationship, and I know it has made Mr. Mong feel uncomfortable. That combined with the fact that I have not been able to identify and secure on his behalf any witnesses that have testimony in his favor about this case or that I believe is favorable seems to have caused him great concern.
 I know Ted has a statement he wishes to make about my services as counsel and his reason for asking for that, so I'll let him speak on his own behalf.
THE COURT: Mr. Mong.
 MR. MONG: Thank you, Your Honor. This is a situation in which I feel Mr. Ennen has unfortunately been considerably handicapped because of education and also because of financial support and that, in itself, has created some serious problems.
 I'd just like to make a few statements of things that I am concerned about and things that I have considered and the reason why I've made the motion or move to dismiss counsel, because I feel that financially he wasn't backed to the point to have the proper support, the staff to do the investigations that the — the financial support to be able to bring certain witnesses in.
* * *
 I was continually given the impression that I needed to make a plea, and although the pleas became supposedly more favorable, my feelings were that there wasn't going to be an awful lot of presentation on my behalf because of the fact that the plea option was always in the — in the background.
 I only became very concerned just recently because of the fact that I was told that there was — as of this past Saturday, there was discovery that was either misplaced or lost and that there was copies of the discovery, because I had them, that needed to be provided so that left considerable questions about actually the preparation.
* * *
 I know that there were key people that I had mentioned that could be of necessity talked to only to find out that some of the people have been subpoenaed. None of the people have been talked to. There have been no depositions studied. I'm just in very serious doubt upon the remarks as Mr. Ennen made that my best option would be to take a plea because it doesn't look as though I'm going to win, and that leaves a little bit of concern for me.
THE COURT: Anything you wish to respond, Mr. Ennen?
 MR. ENNEN: Just briefly. Initially I was — had not had a lot of contact with or familiarity with securities work. I have since educated myself and worked with others who have more knowledge who have answered my questions. I believe that I am now fully prepared to represent Mr. Mong. I believe I'm prepared to go forward.
 My analysis of the case, I have been open and up front and honest with him about my belief as to his position and what we can prove. I have done the best investigation that I can. A number of witnesses whose names he gave me have not been cooperative in returning calls or allowing me to reach them to secure their appearance, but based on things that I know about the case, I have certain questions in my mind as to how effective they would be as witnesses and do not believe that necessarily they are essential to our defense. I know that Ted and I have a disagreement about that.
 Beyond that, I believe I'm prepared to go forward today.
THE COURT: Mr. Oswalt on behalf of the State.
 MR. OSWALT: Several things, Your Honor. First of all, I can confirm through my contacts with the Division of Securities that Mr. Ennen has made phone calls over there, so Mr. Mong's claim that no potential witnesses have been called is just inaccurate. It's not true.
 Second of all, Mr. Mong has been the subject of federal SEC administrative regulation action, state division of securities administrative action for the last two years. If he doesn't have a defense by now, he doesn't have one * * * He has had plenty of opportunity to marshal every witness, every defense that existed.
* * *
 I've talked to Mr. Ennen on occasion. It's clear that he understands the legal principles in this particular case. Although it's a securities case, it is not a difficult securities case by any stretch of the imagination.
 * * * I would strongly oppose any delay in this case. We've had witnesses that have had medical problems. As it is right now, as I've informed the Court, there are two witnesses that have moved to the state of Florida that don't want to come back, so I've had to dismiss two counts. Another delay involves similar problems or likely medical conditions which pose a problem. This case needs to get resolved one way or another, and I don't believe if there is a problem with the defense, that it's anything other than Mr. Mong's failure to — to assist his counsel or listen to advice of counsel.
 THE COURT: The Court determines that the request is, first of all, not very timely made and not founded. The Court would deny the request.
 The Court determines that Mr. Ennen is prepared to go forward. The Court through conferences with counsel for the State and the defense determines that Mr. Ennen is adequately prepared and capable of defending Mr. Mong in this action; that there are some decisions that need to be made by defense counsel that the Court obviously cannot be involved in but determines that Mr. Mong is being adequately represented. The Court, as indicated, would deny the request.
Transcript of the Proceedings, Vol. I, pp. 12-17.
Appellant made his request to the trial court on the morning of trial, after the jury was in the courtroom awaiting voir dire. Appellant alleged appointed counsel lacked experience and education regarding the issues in this case and failed to conduct a complete investigation, which rendered him ineffective. As set forth supra, the trial court questioned appellant on the record regarding the nature of his complaints. Attorney Ennen responded to appellant's allegations by informing the trial court of his preparation, including his attempts to contact the witnesses whose names appellant gave him. Ennen explained the witnesses were uncooperative in returning phone calls and in assuring their appearances at trial. The State informed the trial court his discussions with Ennen regarding appellant's case revealed Ennen's familiarity and knowledge of the issues.
Appellant asserts Ennen's failure to subpoena a single witness on his behalf demonstrates the breakdown in the relationship between the attorney and the client. However, appellant has failed to show how this omission jeopardized his right to effective assistance of counsel. Appellant has failed to point this Court to any portions of the trial record which demonstrate he was prejudiced by Ennen's representation. Further, appellant has failed to establish Ennen's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
Accordingly, we find the trial court did not abuse its discretion in denying appellant's request to discharge appointed counsel and appoint alternative counsel on the morning of trial. The trial court made a meaningful inquiry as to the specifics of appellant's allegations and listened to Ennen's responses thereto. Based upon the statements contained in the record, as set forthsupra, we cannot say the trial court's decision was arbitrary, unreasonable, unconscionable.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends his convictions were against the manifest weight of the evidence. Specifically, appellant asserts the evidence failed to establish he "sold" securities.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
R.C. 1707.01 defines the terms "security" and "sale", as follows:
 (B) "Security" means any certificate or instrument that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, membership interest in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtness, * * * any instrument evidencing a promise or an agreement to pay money, * * *
 (C)(1) "Sale" has the full meaning of "sale" as applied by or accepted in courts of law or equity, and includes every disposition, or attempt to dispose, of a security or of an interest in a security. "Sale" also includes a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a solicitation of an offer to buy, a subscription, or an offer to sell, directly or indirectly, by agent, circular, pamphlet, advertisement, or otherwise.
(2) "Sell" means any act by which a sale is made.
(Emphasis added).
Pursuant to R.C. 1707.01(B), we find the promissory notes issued by appellant were "securities". R.C. 1707.01(B) specifically includes promissory notes within the meaning of "security". We further find appellant's receiving cash from his investors in exchange for the promise of a return of those funds plus interest, as evidenced by the promissory notes, constitutes a "sale" as defined by R.C. 1707.01(C)(1).
In light of the definitions of "security" and "sale", we find the jury reasonably found appellant sold securities. Accordingly, appellant's convictions were not against the manifest of the weight of the evidence.
Appellant's second assignment of error is overruled.
The convictions and sentences of the Licking County Court of Common Pleas are affirmed.
By: Hoffman, J., Gwin, P.J. and Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The State dismissed three counts contained in the original indictment.